IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES WILLIS BONDS,  #215403, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-56-MHT-CSC |
| | ) | (WO) |
| | ) | |
| GWENDOLYN BABERS, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint, as amended, filed on January 23, 2020, by James Willis Bonds, an indigent state inmate, challenging actions which occurred at Ventress Correctional Facility.  (Doc. 1).  He alleges that on September 12, 2019, Defendant Correctional Officers Dominic Whitley and David Dennis used excessive force against him.  (Doc. 1 at p. 3).  He also alleges that unspecified Defendants treated him with deliberate indifference by failing to ensure he receive an x-ray, as ordered by medical providers who examined him following the September 12, 2019, incident.  *Id.*   He further claims that Defendants Warden Babers and Correctional Officers Pamela Harris, Dominic Whitley and Dalvin Rodgers conspired to falsify documents and to deny his due process rights by falsely charging him with assaulting another inmate with a weapon.  *Id.* Finally, he alleges that Defendant Tangela Rodgers, who served as the hearing officer on his assault charge, is guilty of

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

"aiding her coworkers in finding the Plaintiff guilty of a bogus disciplinary on 9-16-19" and Defendant Warden Gordy is guilty of "turning a blind eye to the whole incident".  (Doc 9). Plaintiff also names as a Defendant the Alabama Department of Corrections.[2]  He sues the Defendants in their individual and official capacities.  He seeks monetary damages and declaratory relief.  (Doc. 1 at p. 5).  Plaintiff does not request a jury trial.

The Defendants filed special reports and supplements thereto (Docs. 20, 27, 31, 49, 54, 56 and 58), which included relevant evidentiary materials in support, specifically affidavits, prison documents and medical records, addressing the claims presented by Bonds.  In these documents, Defendants Whitley and Dennis deny they used excessive force against Plaintiff. Further, Defendants Warden Babers and Correctional Officers Harris, Whitley and Dalvin Rodgers deny that they falsified documents or violated Plaintiff's due process rights by bringing false charges against him.  Additionally, Defendant Tangela Rodgers denies violating Plaintiff's due process rights in her role as hearing officer and Defendant Warden Gordy also denies the allegations against him. Also, all Defendants deny that they treated Plaintiff with deliberate indifference by failing to attend to his medical needs.  Finally, all Defendants deny that they violated Plaintiff's constitutional rights in any manner.

---

[2] A prisoner who is allowed to proceed *in forma pauperis* in this court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).  This screening procedure requires the court to dismiss a prisoner's civil action if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i)-(iii). The Alabama Department of Corrections is not subject to suit or liability under § 1983.  Indeed, the Eleventh Amendment bars suit directly against a state or its agencies regardless of the relief sought.  *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89 (1984).  Thus, Bonds' claims against the ADOC are due to be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

After reviewing the special reports and exhibits, the court issued an order on November 12, 2020, requiring Bonds to file a response to the Defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  These orders specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 59 at p. 3).  Bonds filed a response to this order.  (Doc. 60).  Prior to this order, he also filed other responses to the Defendants' special reports.  (Doc. 22 and 35). Pursuant to the directives of the order entered on November 12, 2020, the court now treats the Defendants' special reports as motions for summary judgment and concludes that summary judgment is due to be DENIED on the excessive force claim against Defendants Whitley and Dennis and GRANTED on all other claims.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the

case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape

the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Bond's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After such review, the court finds that Bonds has failed to demonstrate a genuine issue of fact on his claims for deliberate indifference to his medical needs, violation of his due process rights, and conspiracy to falsify documents in order to wrongly charge and convict him of assaulting another inmate with a weapon.  The court further finds that Bonds has demonstrated a genuine dispute of material fact on his excessive force claim against Whitley and Dennis.  Thus, the court concludes that summary judgment is due to be denied on Plaintiff's excessive force claim but is due to be granted on all other claims.

### III.  FACTS

In his complaint Plaintiff claims that on September 12, 2019, Defendant Correctional Officers Whitley and Dennis subjected him to excessive force.  Specifically, he claims that "[i]n the E-dorm lobby at approx. 2 pm, Lt. Whitley and c/o Dennis did beat me upon getting me on the ground, face down, and in handcuffs they begin {sic} kicking and stomping me.  (Doc. 1 at p. 3).  He claims that as a result of the assault his "left rib cage, right shoulder and neck area, and my left wrist was damaged."  *Id.*  He further claims that he was examined at the Ventress infirmary on September 12th and an x-ray was ordered, but he was not seen in the infirmary

again, and was made to "suffer in solitary confinement with my injuries and no treatment or x-ray," until he was transferred away from Ventress on November 18, 2019. *Id.*

He also claims that certain Defendants violated his due process rights by conspiring to bring false charges against him. Specifically, he alleges that Defendants Warden Babers, Captain Harris and Lt. Whitley "cover[ed] up the fact I was assaulted by falsifying documents saying I wasn't and that no chemical agent was used . . . and I was falsely charged with assault on I/M w/ a weapon." *Id.* Finally, he alleges that Defendant Tangela Rodgers, who served as the hearing officer on his assault charge, is guilty of "aiding her coworkers in finding the Plaintiff guilty of a bogus disciplinary on 9-16-19" and Defendant Warden Gordy is guilty of "turning a blind eye to the whole incident". (Doc. 9).

The report of the September 12, 2019, incident, which was created by Defendant Whitley states as follows:

> On September 12, 2019, Correctional Officer Dalvin Rodgers was assigned as Dormitory F Rover. At approximately 2:15 P.M., Correctional Officer Dalvin Rodgers observed inmate Antonio Guyton B/281928 (F1-19A) arguing with inmate Damion Green B/300223 (F1-10A). During the argument inmate James Bonds B/215403 (E1-34A) stabbed inmate Guyton with a handmade knife. Inmate Guyton ran towards the front of the dormitory where officer Rodgers was. Officer Rodgers called for assistance via radio. Correctional Officer David Dennis and Correctional Lieutenant Dominic Whitely responded to Dormitory F-1. During the altercation inmate Terry Smith B/289617 ran towards the front of the dormitory bleeding from his back. Inmate Smith was stabbed by an unknown inmate. Inmate Guyton and Smith was {sic} escorted to the Health Care Unit for medical assessment. Inmate Green was placed in handcuffs and escorted to the Health Care Unit for a medical assessment. Inmate Bonds was able to run out of Dormitory F-1 and into Dormitory E-1. Lieutenant Whitley located inmate Bonds and escorted inmate Bonds to the lobby of Dormitory E. Lieutenant Whitley ordered inmate Bonds to turn around and submit to a search. Inmate Bonds complied with Lieutenant Whitley's order. No contraband was located. *Lieutenant Whitley ordered inmate Bonds to place his hands behind his back so handcuffs could be applied to inmate Bonds.*

*Inmate Bonds quickly turned around stating in a loud aggressive tone that he did not do anything.  Lieutenant Whitely attempted to turn inmate Bonds around by grasping his left arm. Inmate Bonds snatched away aggressively.  Lieutenant Whitley grasped inmate Bonds around his upper torso and placed inmate Bonds on the ground. Lieutenant Whitley placed handcuffs on inmate Bonds and escorted inmate Bonds to the Health care unit.*  While in the Health Care Unit, inmate Guyton was examined by Registered nurse Coy Flonorey and Doctor George Peasant.  Nurse Flornory informed Lieutenant Whitley that inmate Guyton needed to be transported to Date Medical in Ozark, Alabama for further medical treatment.   Lieutenant Whitley notified Correctional Warden II Gwendolyn Babers of the incident.  At approximately 2:54 p.m. Eufaula Rescue enter the facility.  Officer Rodgers re-entered Dormitory F-1 to conduct a search of the area where the incident took place to try and locate the weapon.  No contraband was located.  At approximately 3:10 P.M.  Eufaula Rescue departed with inmate Guyton to Dale Medical.  Correctional Officer Demarkus Bouier provided security inside the ambulance while Correctional Officer Derius Lewis followed in transport van 1945.  After being released from the Heath Care, inmates Smith, Bonds, and green were placed in the Restrictive Housing Unit pending disciplinary action.  Inmate Green will be receiving a disciplinary for disorderly conduct.  Inmate Bonds will be receiving a disciplinary for assault on another inmate.  Inmate Smith was place in restrictive housing for pending investigation.  At approximately 5:00 P.M.  Officer Bouier notified Lieutenant Whitley via telephone inmate Guyton was being admitted to Dale medical.   9/16/2019 6:32 AM by dominic.whitley.

(Doc. 20-7). (Emphasis added).

This account is confirmed by the affidavits of Defendant Whitley (Docs. 20-3, 54-1) and the statement of Defendant Dennis.[3] (Doc. 20-12).  However, absent from the incident report is any statement that Defendant Correctional Officer Dalvin Rodgers saw Bonds stab Guyton and any clarification on how Defendant Whitley learned that Bonds had stabbed Guyton.  Later, Whitley testified that upon radioing for assistance, Correctional Officer Dalvin Rodgers told him that Bonds had stabbed Guyton.  (Doc. 20-3 at p. 1). Further, Whitley testified that he was the

---

[3] Although service was perfected on Correctional Officer David Dennis (Doc. 7), he never filed an affidavit in this action.  Counsel for the Department of Corrections represented to the court that Dennis resigned from the ADOC in February, 2020, and in spite of obtaining a last known contact address for him, counsel was unable to locate Dennis to secure his Affidavit.  (Doc. 27 at p. 1).  ADOC Counsel later filed Dennis' last known address with the court under seal (Doc. 45), but Davis failed to respond to the orders of this Court requiring him to state whether he wished ADOC counsel to continue to represent him in this action. (Docs. 46 and 51).

only correctional officer involved in the actions which form the basis of Bond's excessive force claim.  (Doc. 54-1).  Defendant Dennis confirms that he witnessed the events as relayed by Defendant Whitley, but admits to no participation in restraining and cuffing Bonds following the inmate stabbings.  (Doc. 20-12). Defendant Dalvin Rodgers does not address his part in the September 12th incident.  Indeed, he neither confirms or denies Whitley's testimony that he reported to Whitley Bonds had stabbed Guyton.   (Docs. 20-4, 49-5).

Plaintiff, in response to these allegations, provided the sworn and witnessed affidavits of both Damion Green (Doc. 22-2 at p. 1) and Anthony Guyton (Doc. 22-2 at p. 3), which refute relevant and material portions of Defendant Whitley's testimony and specifically state that Defendant Rodgers was not in the dorm and did not witness the stabbing.   Indeed, Guyton testified as follows:

> James Bonds #215403 was not the person who stabbed me but Joeron Griffin #315962.  I never gave C/O Rodgers a statement saying that I/M Bonds did anything.  I never called Bonds' name.  C/O Rodgers was not in the dorm and did not see what happened to me. He was still posted on the front porch letting the I/Ms catch the store and come back to the dorm.  Me and Bonds have no problems and can live on this compound together.  I have no problem with him at all. We are good.  I hate that he got mixed up in all this.

(Doc. 22-2 at p. 3).  Further, inmate Damion Green # 300223 testified as follows:

> James Bonds <u>DID NOT</u> stab Antonio Guyton.  Inmate Joeron 315562 stabbed Antonio Guyton in the back b/c when I entered the dorm with my store bag Antonio Guyton took his knife out and charged at me.  Inmate Joeron saw Guyton do this and stabbed Guyton in the back and ran him out of the dorm.

(Doc. 22-2 at p. 1) (Emphasis in Original).

Plaintiff also specifically disputes relevant and material portions of Whitley's testimony by his own statements about what occurred on September 12, 2019.  Indeed, Plaintiff states that

8

about thirty minutes after the inmate stabbing incident, Defendant Correctional Officers Whitley,

Dennis, Thomas and Rodgers entered Dorm E.  He then claims as follows:

> They located I/M Bonds and asked him to step into the lobby.  I/M Bonds complied. Upon entering the lobby he was asked to turn around and submit to a shakedown.  He complied.  They closed E-1 and E-4 doors and asked I/M Bonds to catch the wall for another shake down. He complied.  *He was then handcuffed* and asked to turn around. He complied.  Lt. Whitley asked him did he have anything to do with those I/Ms getting stabbed.  Bonds said no.  He was only helping 2 guys, Green and Thomas carry their store bags in that dorm.  Lt. Whitley asked did he stab the I/M's.  Bond said no.  That whatever was going on in that dorm happened before he got there.  *Lt. Whitley then struck Bonds in the head area.  C/O Dennis then hit him in the neck area with his baton. Then they both begin assaulting him.  Once they got him on the ground face down they begin stomping and kicking him in the shoulder, back, and rib (left) area.*  The I/M/s in E-1 and E-4 begin yelling and beating on the doors for the officers to stop.  E-1 and E-4 doors come open due to the I/M's kicking and beating.  C/O Dennis and Lt. Whitley then sprayed chemical agent to subdue the other I/M's.

(Doc. 22-3 at p. 2) (Emphasis added).

## IV.  DISCUSSION

### A. OFFICIAL CAPACITY CLAIMS

To the extent Bonds requests monetary damages from the Defendants in their

official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all

respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S.

159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

9

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala*., 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, the Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).   Thus, the court will now address the Plaintiff's claims brought against Defendants in their individual capacities.

## B. CLAIMS FOR DELIBERATE INDIFFERENCE

### 1. <u>Standard of Review</u>

"Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" toward an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and yet disregards the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

"[D]eliberate indifference describes a state of mind more blameworthy than negligence," and ordinary lack of care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982). The law is settled that both objective and subjective elements are necessary. *Caldwell*, 748 F.3d at 1099.

With respect to the objective element, an inmate must first show "an objectively substantial risk of serious harm … exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable

manner." *Marsh v. Butler County, Ala*., 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference … ." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. …" *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident].").

The court will now turn its attention to the Plaintiff's claims of excessive force against Defendant Officers Whitley and Dennis.  For the reasons that follow, the court concludes that Plaintiff has demonstrated a genuine issue of material fact exists as to whether the force used by Whitley and Dennis was applied "maliciously or sadistically".  *Whitley v. Albers*, 475 U.S. 312 at 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

### 2. <u>Excessive Force</u>

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates a prisoner's constitutional rights.'" *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21. With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id.* at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Summarizing the excessive force standard in the prison context, the Eleventh Circuit wrote:

> [u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are

13

> considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

Recently, the Eleventh Circuit applied the *Whitley* factors in an a §1983 action brought by a pro se prisoner for injuries he received during the inspection of his cell after he failed to follow an order from the defendant prison officers. *Miles v. Jackson,* 757 F. App'x. 828 (11th Cir. 2018). In *Miles,* the court identified the five factors relevant in determining whether force was applied "maliciously or sadistically" as "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat 'reasonably perceived by the responsible officials,' . . . (4)'any efforts made to temper the severity of the use of a forceful response,'" and "(5) [t]he absence of serious injury." *Id.,* at 829 citing *Hudson,* 503 U.S at 7; quoting *Whitley,* 475 U.S. at 321.

Moreover, the Eleventh Circuit has stated that "[w]hen evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *Hudson*, 503 U.S. at 7 (holding that courts are to "give a wide range of deference to prison officials acting to preserve discipline and security."). In

addition, the determination "must not be made in the glow of hindsight." *Griffin v. Troy State Univ.,* 128 F. App'x 739, 742 (11th Cir. 2005) (citation omitted). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533. Generally, correctional officers are authorized to use force when a prisoner "fails to obey an order. Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson*, 665 F. App'x at 864 (internal citation omitted).

Here, Officer Whitley testified that he used only reasonable force to subdue Bonds who refused a direct order immediately following an inmate stabbing incident about which Correctional Officer Dalvin Rodgers had informed him involved Bonds. (Doc. 20-3 at p.1). Specifically, the incident report states as follows:

> Lieutenant Whitley ordered inmate Bonds to place his hands behind his back so handcuffs could be applied to inmate Bonds. Inmate Bonds quickly turned around stating in a loud aggressive tone that he did not do anything. Lieutenant Whitely attempted to turn inmate Bonds around by grasping his left arm. Inmate Bonds snatched away aggressively. Lieutenant Whitley grasped inmate Bonds around his upper torso and placed inmate Bonds on the ground. Lieutenant Whitley placed handcuffs on inmate Bonds and escorted inmate Bonds to the Health care unit

(Doc. 20-7). On the other hand, Bonds describes the September 12, 2019, incident as an unprovoked attack against him by Officers Whitley and Dennis following an inmate stabbing incident which did not involve him in any manner. Specifically, he claims as follows:

> He was then handcuffed and asked to turn around. He complied. Lt. Whitley asked him did he have anything to do with those I/Ms getting stabbed. Bonds said no. He was only helping 2 guys, Green and Thomas carry their store bags in that dorm. Lt. Whitley asked did he stab the I/M's. Bond said no. That whatever was going on in that dorm happened before he got there. Lt. Whitley then struck Bonds in the head area. C/O Dennis then hit him in the neck area with his baton. Then they both begin assaulting him. Once they got

15

him on the ground face down they begin stomping and kicking him in the shoulder, back, and rib (left) area.

(Doc. 22-3 at p. 2). Two inmate affidavits support Plaintiff's claims that he did not stab inmate Guyton. (Doc. 22-2 at pp. 1 and 3).

Concerning Plaintiff's injuries suffered from the September 12, 2019 incident, the undisputed medical records demonstrate that upon examination Plaintiff reported pain in the right shoulder, left rib cage, neck and right wrist. (Doc. 27-1 at p. 5). Medical personnel ordered 400 mg ibuprofen as needed for Plaintiff's pain and an "x-ray of the R shoulder, R hand and AP lateral chest in the am. F/U on Monday." (Doc. 27-1 at p. 6). Plaintiff claims he never received the x-ray and was not seen back in the Ventress infirmary, but was made to suffer in solitary confinement until his transfer from Ventress on November 18, 2019. (Doc. 1 at p. 3).

For purposes of evaluating summary judgment, the factual averments must be construed in a light most favorable to Bonds. *See Sears v. Roberts,* 922 F. 3d 1199, 1206 (11th Cir. 2019). That standard now mandates a finding that the material facts surrounding the September 12, 2019, incident are in dispute. For example, a genuine dispute exists as to whether the underlying incident was a justified response to information received by Whitley from Dalvin Rodgers that Plaintiff had stabbed inmate Guyton and thus maybe in possession of a weapon. Also, a genuine dispute exists as to the amount of force used by Whitley and Dennis to restrain Plaintiff and whether any force was used following Plaintiff being handcuffed and placed on the ground. Further, a genuine dispute likewise exists as to the extent of the injuries suffered by Plaintiff

during the incident with Whitley and Dennis.[4]   Thus, a question of fact exists as to whether Officers Whitley and Dennis were applying force "maliciously and sadistically to cause harm." Accordingly, the undersigned concludes that summary judgment is due to be denied on Bond's claim of excessive force against Officers Whitley and Dennis.   The Court will now turn its attention to the Plaintiff's claims that unspecified Defendants acted with deliberate indifference in failing to ensure Plaintiff received an x-ray.

3. **Deliberate Indifference to Medical Needs**

At the outset the court notes Plaintiff fails to allege that any named Defendant treated him with deliberate indifference by ignoring a substantial risk of harm to him.   Plaintiff's medical records contain a notation by medical personnel about the need for Plaintiff to have an x-ray following the September 12, 2019 incident. (Doc. 27-1 at p. 6). Even though Plaintiff claims this x-ray never occurred, he fails to direct this claim to any Defendant.   Specifically, Plaintiff fails to identify who allegedly was aware of the medical personnel's directive, how this Defendant was aware and how he or she ignored an unreasonable risk of harm to Plaintiff.

To survive the properly supported motion for summary judgment filed by the Defendants, Bonds must first demonstrate an objectively substantial risk of serious harm existed to him and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100.   If he establishes these objective elements, Bonds must then satisfy the subjective component.   This requires Bonds to show "that defendant subjectively knew that [he]

---

[4] Plaintiff's injuries maybe characterized as non-serious. The United States Supreme Court, however, has made clear that an excessive force claim may survive even where the injury is not "serious." *Hudson,* 503 U.S. at 4.

faced a substantial risk of serious harm.  The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear ***felt by [the] [p]laintiff***."  *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added).  Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference."  *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

Based upon the court's careful review of all the evidence, the court concludes that the Plaintiff fails to allege, much less offer any proof, that any specific Defendant was aware of the x-ray notation in Plaintiff's medical records or that any medical personnel had advised any Defendant that Bonds was in need of any further treatment.  Further, there is no allegation that any named Defendant was aware he suffered needlessly in solitary confinement without treatment until he was transferred away from Ventress.  Accordingly, summary judgment is due to be granted in favor of all Defendants on Plaintiff's claim for deliberate indifference based upon a denial of medical treatment.

## C.    DUE PROCESS

To the extent Bonds alleges that Defendants Babers, Harris, Whitley, Tangela Rodgers and Davlin Rodgers failed to follow DOC procedures with respect to investigating and bringing charges against him for allegedly assaulting another inmate with a weapon which resulted in a

disciplinary conviction, the court concludes that this claim fails.  Indeed, this allegation does not amount to an Eighth Amendment violation as the "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir.2000); *Losey v. Warden*, 521 F. App'x 717, 719-720 (11th Cir.  2013) (holding that prisoner's allegation that two correctional officers failed to follow procedures regarding official count of inmates and thereby failed to protect him from rape by fellow inmate did not rise to the level of deliberate indifference and instead was at most only a form of negligence); *see also Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (explaining that "the protections of the Constitution  . . . are just not triggered by lack of due care by prison officials."); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (finding  that a violation of the Eighth Amendment "must involve more than  ordinary lack of due care for the prisoner's . . . .safety").

Likewise, to the extent that Plaintiff attempts to state a claim under the Fourteenth Amendment, the Court concludes this claim must fail because "inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Banks v. Annucci*, 48 F. Supp.3d, 394, 414 (N.D. N.Y. 2014); *see also Torres v. Mazzuca*, 246 F. Supp.2d 334, 342 (S.D. N.Y. 2003) (prisoners have no due process right to an investigation of grievances). "The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't. of Soc. Servs.*, 489 U.S. 189, 196 (1989). While § 1983 "provides a mechanism for enforcing a right or benefit

established elsewhere," it does not in and of itself create a federal right or benefit.   *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).   Accordingly, Plaintiff's allegations concerning Defendants' failure to investigate or follow procedures in bringing the charge against him for assaulting another inmate with a weapon and his subsequent disciplinary conviction for this offense do not state a plausible claim for relief under the Eighth or Fourteenth Amendments. Thus, summary judgment is due to be granted on this claim.

### D. CONSPIRACY

Bonds claims that Defendants Babers, Harris, Tangela Rodgers, Davlin Rodgers, and Whitley conspired against him to falsify documents and to charge and convict him of assaulting another inmate with a weapon.  This claim fails as a matter of law because Bonds has failed to "show that the parties 'reached an understanding' to deny plaintiff his or her rights . . .  [and] prove an actionable wrong to support the conspiracy."  *Bendiburg v. Dempsey,* 909 F. 2d 463, 468 (11th Cir. 1990).  Indeed, neither the complaint nor Bond's subsequent pleadings identify any agreement or action taken by the Defendants to deny Bonds his constitutional rights.  Rather, Plaintiff's claim of conspiracy hinges solely upon the finding of guilt against him in a disciplinary proceeding.  *See Phillips v. Mashburn,* 746 F. 2d 782, 785 (11th Cir. 1984) ("Naked assertion" of conspiracy without "supporting operative facts" insufficient to state a claim.) Accordingly, the court concludes that summary judgment is due to be granted on this claim.

### E.  RESPONDEAT SUPERIOR

Plaintiff claims that Warden Gordy should be held liable on a theory of respondeat superior for the alleged actions or omissions of his subordinates because he "turn[ed] a blind eye

to the whole incident".  (Doc 9).  However, the law is well established that supervisory officials cannot be held vicariously liable in § 1983 actions.  *See, e.g., Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994).  As explained by the United States Supreme Court:

> … Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability] … .  A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties.  Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation, and parentheses omitted); *see also Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability"); *Marsh,* 268 F.3d at 1035 (holding that a supervisory official "can have no respondeat superior liability for a section 1983 claim"); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (holding that 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability).

Liability could attach to Warden Gordy only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360; *see also Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is

21

only liable for his or her own misconduct."). Yet the record is clear Warden Gorday did not personally participate or have any direct involvement in the underlying events at Ventress Correctional Facility. Indeed, Plaintiff claims simply that Warden Gordy is guilty for "turning a blind eye to the whole incident". (Doc 9).

To establish a sufficient causal connection without direct participation, a plaintiff must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in deliberate indifference to [his medical needs], or . . . facts [that] support an inference that [the correctional defendants] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). After extensive review of the pleadings and evidentiary materials, the undersigned concludes that Bonds has failed to present any such evidence in that regard. Accordingly, summary judgment is due to be granted in favor of Warden Gordy.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Alabama Department of Corrections be DISMISSED as a party to this action pursuant to 28 U.S.C. §1915(e)(2)(B)(i);

2. The Defendants' motions for summary judgment be GRANTED on Plaintiff's claims for monetary damages against all Defendants in their official capacities;

3. The Defendants' motions for summary judgment be DENIED on Plaintiff's excessive force claim against Defendant Officers Dominic Whitley and David Dennis;

4. The Defendants' motions for summary judgment be GRANTED on Plaintiff's claims for deliberate indifference to medical needs, due process violations and conspiracy and those claims DISMISSED;

5. Defendants Gwendolyn Babers, Pamela Harris, Davlin Rodgers, Tangela Rodgers and Christopher Gordy be DISMISSED with prejudice as parties to this action.

6. This action be set for trial on the Plaintiff's excessive force claim against Defendant Officers Dominic Whitley and David Dennis.

On or before **February 8, 2023**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 25th day of January, 2023.

    /s/   Charles S. Coody
UNITED STATES MAGISTRATE JUDGE